In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-495 CR


____________________



FRANKLIN EUGENE BOONE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 05-03-02594-CR






 MEMORANDUM OPINION 


 A jury found Franklin Eugene Boone guilty of attempted burglary. See Tex. Pen.
Code Ann. §§ 15.01(a), 30.02(a)(1), (3) (Vernon 2003). Though Boone pled "not guilty"
to the offense, he and the State entered into a sentencing agreement after the jury reached its
verdict. Boone pled "true" to five enhancement paragraphs, and the State recommended a
sentence of twenty-five years. The trial court sentenced Boone to the recommended twenty-five years in prison and later certified that Boone had the right to appeal the jury's verdict. 
Boone brings four issues for our review. We affirm.

 In issues one and two, Boone challenges the legal and factual sufficiency of the
evidence supporting his conviction for the attempted burglary of Mary Haake's home. He
argues that the evidence is insufficient to show he attempted to enter Haake's home by using
a screwdriver to open a lock. (1)

 In determining issues of legal sufficiency, we ask if, after reviewing the evidence in
the light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the offense to exist beyond a reasonable doubt. Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006);
Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). "The reviewing court must
give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"
Hooper, 214 S.W.3d at13 (quoting Jackson, 443 U.S. at 318-19, 99 S.Ct. 2781).


 In determining the evidence's factual sufficiency, we review the evidence in a neutral
light. Roberts v. State, No. AP-75051, 2007 WL 1135647, at *1 (Tex. Crim. App. Apr. 18,
2007). "Evidence can be factually insufficient in one of two ways: (1) when the evidence
supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust,
and (2) when the supporting evidence is outweighed by the great weight and preponderance
of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust." Id.
(citing Watson v. State, 204 S.W.3d 404, 414-415 (Tex. Crim. App. 2006); Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). The reviewing court may not reverse for factual
insufficiency if "'the greater weight and preponderance of the evidence actually favors
conviction.'" Roberts, 2007 WL 1135647, at *1 (quoting Watson, 204 S.W.3d at 417). 
While the appellate court may "second-guess the jury to a limited degree, the review should
still be deferential, with a high level of skepticism about the jury's verdict required before
a reversal can occur." Roberts, 2007 WL 1135647, at *1 (citing Watson, 204 S.W.3d at 417;
Cain v. State, 958 S.W.2d 404, 407, 410 (Tex. Crim. App. 1997)).

 A person commits the offense of burglary of a habitation if, without the effective
consent of the owner, (i) he enters a habitation with intent to commit a felony, theft, or
assault, or (ii) he enters a habitation and commits or attempts to commit a felony, theft, or
assault. Tex. Pen. Code Ann. § 30.02(a)(1), (3) (Vernon 2003). A person commits the
offense of attempted burglary of a habitation if, with specific intent to commit the offense,
"he does an act amounting to more than mere preparation that tends but fails to effect the
commission of the offense intended." Tex. Pen. Code Ann. § 15.01(a) (Vernon 2003). 

 Boone argues that the evidence fails to show he used a screwdriver to open any lock
of Haake's home. Boone contends there was:


 no testimony that any of the exterior doors providing entry into Haake's residence
were opened;
 no testimony that Boone attempted to enter Haake's residence or attempted to open
any lock of the residence;
 no testimony about or photographs showing any scrapes, scratches, pry marks, or
damage of any kind to any surface on the exterior of the residence, to any exterior
door of the residence, or to any exterior lock of the residence;
 no testimony that a screwdriver was used to open any exterior lock of the residence
or to attempt to open any exterior lock of the residence. 


The Evidence


 Beginning with Trevan Hartman (Haake's neighbor), the State presented several
witnesses to establish its case against Boone. Hartman testified that their neighborhood is
located in a rural area on a dead-end road and that the neighbors watch out for one another. 
On the day of the offense, Hartman saw a stranger walking down the road with a piece of
rope in his hand. Hartman watched the man "cut across the woods" toward Haake's home.
After seeing the man on Haake's property, Hartman got his pistol, walked across the road,
and knocked on Haake's door. When no one answered the door, Hartman walked down the
driveway and noticed a pried screen on Haake's front window. Hartman walked to another
door, knocked there, and shouted, "hello." Still receiving no answer, Hartman looked around
the corner of the house and saw Boone, the stranger, with his hand on the handle of a door
to the house. According to Hartman, from a distance of fifteen feet he saw Boone stick a
screwdriver in the door of Haake's home. At that point, Hartman stepped around the corner,
pulled his gun, and instructed Boone to lie down. Before complying with Hartman's
instructions, Boone threw the rope and screwdriver toward the wooded area close to Haake's
home. After Boone lay down, Hartman called his wife on a cell phone and requested that she
call for law enforcement assistance. 

 Hartman further testified that Boone asked to leave before the police arrived. Boone
told Hartman that the homeowners were his friends and that he was there to use the
telephone. After the officers arrived, they took Boone into custody, and Hartman assisted
the officers in locating the screwdriver and rope. On cross-examination, Hartman conceded
that he did not see Boone take the screen off the window and that he did not know whether
Boone knocked on Haake's door. 

 Larry Oxner, a deputy with the Montgomery County Sheriff's Department, testified
about Boone's arrest. Oxner interviewed Boone at Haake's house. Boone said that after
arguing with someone, he walked to Haake's house to use the telephone. Oxner testified that
business establishments near the location of the alleged argument had phones available for
public use. Further, Oxner found a screwdriver and cord within throwing distance of the
house. On cross-examination, Oxner conceded that the evidence collected at the scene did
not, by itself, indicate Boone's intent to commit burglary. 

 Mary Haake testified that she hired Boone to paint her home in 2003. Haake said that
Boone did a good job and was an "excellent painter." After Boone completed the work,
Haake never saw Boone again. She further testified that she did not give Boone permission
to enter her home on the day of the offense, September 29, 2004.

 The State also offered testimony about a prior offense committed by Boone. Dan
Norris, an officer with the Montgomery County Sheriff's Department, testified that Boone
pled guilty to a 1989 offense, burglary of a habitation. Norris explained that a pry bar had
been used during the 1989 offense to open the home's back door.

 In his defense, Boone presented two witnesses, his wife and his cousin. Marti Boone, 
his wife, testified that Boone had persistent trouble with his truck during September 2004. 
Boone often carried a screwdriver so he could repair things, Marti said, as he was a "fix-it-of-all trades kind of guy." Jessie Boone, his cousin, stated that he worked with Boone at
Haake's home in 2003. Jessie also remembered that Boone had problems with his truck in
2004. On two occasions, he and Boone attempted to repair the truck's alternator.

 We find the evidence legally sufficient to show that Boone attempted to enter Haake's
home. The record shows that Hartman saw Boone with "his hand on the handle of the door.
. . and he had a screwdriver in his hand." Hartman said Boone "was sticking the screwdriver
in the door." Further, Hartman testified that Boone attempted to discard the screwdriver,
which is evidence consistent with Boone's consciousness of guilt. In this case, the jury could
have found that the essential elements of attempted burglary existed beyond a reasonable
doubt. See Hooper, 214 S.W.3d at 13. We overrule issue one.

 In addition, the evidence is factually sufficient to support Boone's conviction for
attempted burglary. We have reviewed all of the evidence and considered Boone's
arguments about the lack of physical evidence, such as scrapes, pry marks, and photographs.
In light of Hartman's direct testimony that he saw Boone stick a screwdriver in Haake's back
door and then attempt to discard it, the evidence supporting the verdict is not so "weak" that
it renders the verdict "clearly wrong and manifestly unjust." See Roberts, 2007 WL 1135647,
at *1. Further, the great weight and preponderance of the evidence supporting Boone's
arguments does not outweigh the evidence supporting the verdict and render it "clearly
wrong and manifestly unjust." See id. We overrule issue two.

Extraneous Offense


 In issue three, Boone contends the trial court abused its discretion in admitting
evidence of a prior conviction. Boone argues that the trial court erred in admitting evidence
of his conviction for burglary of a habitation because the offense was more than ten years
old. Boone contends that Rule 609 makes the 1989 extraneous offense inadmissible. See
Tex. R. Evid. 609(b). (2)

 Rule 609 imposes a ten-year limitation for extraneous evidence offered to impeach
a witness's testimony. Tex. R. Evid. 609(b). (3)
 However, Rule 609 does not apply here
because the State offered the extraneous evidence to show intent, not to attack a witness's
credibility. In fact, Boone did not testify. Further, he did not present this argument to the
trial court. See Tex. R. App. P. 33.1(a). We overrule issue three.

Jury Misconduct


 Issue four asserts the trial court abused its discretion in denying Boone's motion for
new trial. Boone alleges that the trial court should have granted his motion because of jury
misconduct during the deliberations on his guilt. 

 Boone's motion for new trial alleges that the affidavit of juror James Mitchell presents
evidence that (1) the jurors did not follow the judge's instructions about discussing the facts
and evidence only during jury deliberations; (2) the jurors did not "accurately weigh all the
facts and evidence in this case[;]" and, (3) Mitchell "only agreed to a vote of guilty after
having the discussion with other members of the jury, that they would agree[] to a minimum
sentence of approximately two or three years of incarceration." 

 Rule 606(b) of the Texas Rules of Evidence provides:

 Upon an inquiry into the validity of a verdict or indictment, a juror may
not testify as to any matter or statement occurring during the jury's
deliberations, or to the effect of anything on any juror's mind or emotions or
mental processes, as influencing any juror's assent to or dissent from the
verdict or indictment. Nor may a juror's affidavit or any statement by a juror
concerning any matter about which the juror would be precluded from
testifying be admitted in evidence for any of these purposes. However, a juror
may testify: (1) whether any outside influence was improperly brought to bear
upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.


Tex. R. Evid. 606(b).

 As this Court recently explained, Rule 606(b) means that "'jurors are no longer
competent to testify that they decided the verdict by lot, that they decided the case based on
another juror's incorrect statement of the law, or that they discussed the defendant's failure
to testify and used that failure as a basis for convicting him.'" State v. Krueger, 179 S.W.3d
663, 666 (Tex. App.-Beaumont 2005, no pet.) (quoting State v. Ordonez, 156 S.W.3d 850,
852 (Tex. App.-El Paso 2005, pet. ref'd)); see also Hines v. State, 3 S.W.3d 618, 621 (Tex.
App.-Texarkana 1999, pet. ref'd). 

 Rule 606(b) provides only two exceptions. A juror may testify: (1) "whether any
outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that
the juror was not qualified to serve." Tex. R. Evid. 606(b). "To constitute 'outside
influences,' the information must have come from a source outside the jury, i.e., a non-juror
who introduces information affecting the verdict." Tinker v. State, 148 S.W.3d 666, 673
(Tex. App.-Houston [14th Dist.] 2004, no pet.). "Even a juror's injection of his own
personal experiences, knowledge, or expertise will not be considered as an 'outside
influence' because such is said to emanate from inside the jury." Franks v. State, 90 S.W.3d
771, 800 (Tex. App.-Fort Worth 2002, no pet.).

 None of the statements in Mitchell's affidavit regarding the jury's deliberations fall
within the two exceptions provided by Rule 606(b). The affidavit does not assert that
information came from a source outside the jury or that a juror lacked the qualifications to
serve. See Tex. R. Evid. 606(b). Thus, Mitchell's affidavit offered no competent evidence
for the trial court's consideration. See Krueger, 179 S.W.3d at 666. Further, at the hearing
on Boone's motion, Mitchell testified that he had no information about any outside
influences affecting the jury's deliberations and that he knew of no reason why he would
have been disqualified from serving as a juror in Boone's case. Thus, the trial court properly
denied Boone's motion for new trial. We overrule issue four. 

 Having overruled all of Boone's issues, we affirm the trial court's judgment.

 AFFIRMED.



 ____________________________

 HOLLIS HORTON

 Justice




Submitted on February 8, 2007

Opinion Delivered June 6, 2007

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. The charge instructed the jury to consider the following elements in determining its
verdict: (1) whether Boone with specific intent to commit the offense of burglary, (2)
attempted to enter Haake's home by using a screwdriver to open a lock, (3) without her
consent, (4) with intent to commit theft, and (5) whether the attempt amounted "to more than
mere preparation that tends but fails to effect the commission of the offense intended. . . ." 
2. While Boone also cites Rules 401, 402, 403, and 404, he made no arguments
applying these evidentiary rules to his case. See Tex. R. Evid. 401, 402, 403, 404. We
decline to make his arguments for him. See Tex. R. App. P. 38.1(h); Wyatt v. State, 23
S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000); Ladd v. State, 3 S.W.3d 547, 573 (Tex. Crim.
App. 1999).
3. Rule 609 is entitled "Impeachment by Evidence of Conviction of Crime," and
provides, in pertinent part, as follows: "Evidence of a conviction under this rule is not
admissible if a period of more than ten years has elapsed since the date of the conviction or
of the release of the witness from the confinement imposed for that conviction, whichever
is the later date, unless the court determines, in the interests of justice, that the probative
value of the conviction supported by specific facts and circumstances substantially outweighs
its prejudicial effect." Tex. R. Evid. 609(b).